E-FILED
Friday, 16 August, 2024  12:04:33 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### Springfield Division

| | |
|---|---|
| Tayler B. Day<br>individually<br>and on behalf of all persons<br>similarly situated<br>as<br>members of the Collective as permitted<br>under the Fair Labor Standards Act<br>and as a Class representative for the<br>IWML Class; | ) <br>)<br>)<br>)<br>) CASE NO 24 CV 3222<br>)<br>)<br>)<br>)<br>) Honorable District Judge<br>) |
| Plaintiff,<br>vs.<br>Menke Incorporated<br>d/b/a Little Red Wagon<br>and/or<br>Menke Incorporated<br>d/b/a Little Red Wagon day care center<br>And<br>Janene Gunn Purdon-Menki,<br>as an individual<br>under FLSA and Illinois Wage Laws<br>as well as under the Illinois Whistleblower<br>Act | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **EQUITABLE RELIEF IS SOUGHT**<br>)<br>) <u>**JURY TRIAL DEMANDED**</u><br>) <u>**ON ALL COUNTS**</u> |
| Defendants | ) |

## PLAINTIFF'S
## INDIVIDUAL, COLLECTIVE AND CLASS COMPLAINT

NOW COMES the Plaintiff, Tayler B. Day, individually and on behalf of all others

similarly situated, as class representative, by and through her undersigned counsel of

record, upon personal knowledge as to those allegations in which she so possesses and

upon information and belief as to all other matters, pursuant to §216(b) of the Fair

Labor Standards Act (hereinafter "FLSA"), the Illinois Minimum Wage Law 820

ILCS 105/1 *et seq* (hereinafter "IMWL" ), the Illinois Wage Payment and Collection

Act (IWPCA) and under Illinois Common Law bringing claim for a retaliatory discharge and/or the Whistleblower Act (740 ILCS 174/1) brings these causes of action against Defendant Menke Incorporated d/b/a Little Red Wagon and/or Menke Incorporated d/b/a Little Red Wagon Day Care Center (Hereinafter referred to as (Menke") and Janene Gunn Purdon-Menki individually, in so doing states the following:

## NATURE OF THE ACTION

1.      Plaintiff, Tayler Day alleges individually and on behalf of herself and other similarly situated current, former and future employees of the Defendant, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiff and those employees that are similarly situated to the Individual Plaintiff) that she, under both federal and state wage laws, is entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week.

2.      This action is brought as a class action pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL").

3.      This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime pay which was not compensated at the proper rate of pay and a rate of pay to include all compensation.

4.      This action is also brought as an Individual action under the IWPCA, in that Defendants took unauthorized/unconsented deductions from Plaintiff's wages.

5.      Said unauthorized wage deductions are/were also violations of the FLSA and IMWL in that the deductions were without authority, an independant violation of the FLSA/IMWL, and reduced Plaintiff's wages below the minimum wage rate, a separate violation of the FLSA and IMWL.

6.      Plaintiff also brings claims under the Illinois Whistleblower Act 740 ILCS 174/1 in that Plaintiff provided truthful testimony to the Illinois Department of Child and Family Services (DCFS) and for that testimony Plaintiff was retaliated against by Defendants termination of Plaintiff's employment.

7.      Plaintiff also brings claims under Illinois Common Law in that Plaintiff provided truthful testimony to the Illinois Department of Child and Family Services (DCFS) and for that testimony Plaintiff was retaliated against by Defendants termination of Plaintiff's employment in violation of a public policy of supporting those providing testimony.

8.      Plaintiff, in her individual, class and collective claims, requests injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendant, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendant obtained from their unlawful business practices and attorneys' fees and costs.

9.      Plaintiff seeks injunctive and declaratory relief for the classes non-monetary claims.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C

1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

11.     This court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL").

12.     The Court is authorized to issue a declaratory judgment.

13.     Venue is proper in this Court.

14.     Defendant does business and is a resident of this District and Division of Federal Court.

15.     Defendant conducts business in Illinois and other states, thereby engages in Commerce.

16.     Plaintiff individually engaged in commerce by doing business of the Defendant in Illinois and other states.

17.     Defendant sales exceeds $500,000 per year.

18.     Defendant accepts customer payments via payment by credit cards.

19.     Defendant processes payments from customers via payment by credit cards, and those credit card payments are processed in states other than the state of Illinois.

20.      Defendant processes payments from customers via payment by credit cards, and those credit card payments are processed in states other than the state of Illinois thus Defendant Menke engages in commerce between states.


**FACTS REGARDING THE PLAINTIFF**

21.     Plaintiff Tayler Day is a resident of the State of Illinois and a former non-exempt employee of corporate Defendant Menke.

4

## MENKE CORPORATE FACTS

22.    Defendant Menke Incorporated d/b/a Little Red Wagon and/or Menke Incorporated d/b/a Little Red Wagon Day Care Center (Menke) is a corporation or business which does business in Illinois.

23.    Defendant Menke employs a staff of 30-40 full and part time employees at any one time.

24.    Defendant Menke is located in Jacksonville, Illinois.

25.    Defendant has operated at the current Jacksonville, Illinois location since 2021, employing 30-40 employees at any one time, and hundreds of employees over that period of time, due, in part, to normal "turnover" of employees.

26.    Plaintiff estimates that more than 50-100 employees work for Defendants during the relevant period of time of three years.

## COLLECTIVE ACTION ALLEGATIONS

### The FLSA Collective Action

27.    Plaintiff bring claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of Menke who were, are, or will be employed by MENKE during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week (including unpaid training work hours) and/or who were not compensated at the federal minimum wage rate of $7.25 per hour and/or were paid at an improper rate of pay for overtime hours and/or shaved work hours of the Plaintiffs and Collective.

5

28.    The FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiff are similar to the FLSA claims of all employees employed by MENKE.

29.    Defendants are liable for improperly compensating Plaintiff and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of MENKE who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

### Class Allegations under IMWL

30.    Plaintiff also brings state wage law claims, pursuant to the Illinois Minimum Wage Law (IMWL) 820 ILCS 105, as individual and class action.  The IMWL Class is defined as all current, former and future employees of Menke that had the following pay violations

a.    The IMWL Class was not paid overtime wages at an overtime rate of pay thereby denying the IMWL class owed overtime wages and/or payment of the proper overtime rate.

b.    The IMWL Class had time shaved from their work hours and/or paid hours including unpaid training time and/or unpaid overtime hours.

c.    Defendants have failed to maintain time records of the Class.

31.    Plaintiff's IMWL Class includes claims due for three (3) years prior to the filling of this complaint and until a judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiffs and the IMWL Class), Plaintiffs will seek class certification for 3 years initially.

32.    Excluded from the Class are Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in Defendant; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class and/or all properly salaried employees of Defendant.

33.    **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant.  Upon information and belief, there are hundreds of members of the Class based upon the fact that during the Class Period the Defendant employed from 50-100 employees. The numerosity is also demonstrated by the DEFENDANT having a work force of 18-20 employees at any one time and due to the high "turnover" of these positions the number of potential class members is increased substantially.

34.    **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

a. whether the Defendants employed Plaintiff and the Class within the meaning of the IMWL.

b.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records

c. whether the Plaintiff and the Class were paid overtime wages pursuant to the overtime provisions of the IMWL

d.  whether Defendants engaged in a continuing policy, pattern or practice of failing to pay all overtime wages at the proper rate of pay which includes all compensation;

e. whether the IMWL Class had time shaved from their work hours and/or paid hours.

f. whether the Defendants have failed to maintain time records of the Class.

35.    **Typicality**:    The claims of Representative Plaintiff is typical of the IMWL Class.

36.    **Adequacy:** Representative Plaintiff will fairly and adequately represent the interests of the IMWL Class.

37.    **Superiority:**  A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiff lacks the financial resources to

vigorously prosecute separate lawsuits in Court against corporate Defendant like Defendant.

38.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

39.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendants.

40.    The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

41.    IMWL violation claims are brought and maintained as a class for all IMWL claims asserted by the Plaintiff.

42.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

43.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendant.

44.    The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## STATEMENT OF FACTS

**A.**  **MENKE policies and procedures and Compensation Practices fail to pay proper overtime rate of pay and/or pay all overtime hours**

45.    Plaintiff was employed by MENKE as an employee of the Defendant and Plaintiff worked beyond forty hours, but for which Defendants failed to pay overtime at the proper and correct rate of pay and/or failed to pay any of the worked hours.

## FAILURE TO PAY OVERTIME RATE OF PAY CORRECTLY

46.    Plaintiff Tayler Day worked as an hourly non-exempt employee of Defendant Menke.

47.    Plaintiff Day regular rate of pay, in March and April of 2024, was $21.00 per hour.

48.    Yet Defendant Menke paid Plaintiff overtime pay at an improper overtime rate of $30.00 per hour.

49.    Plaintiff Day's actual overtime rate, based on a regular rate of $21.00 per hour, should have been paid at $21.00 multiplied by 1.5 or $31.50, thus Plaintiff Day was shorted in her overtime payments.

50.    Plaintiff is aware that other employees were similarly not paid a proper time-and-a-half rate, rather paid, like she was, at a lesser rate of pay.

51.    Plaintiff names this group of employees as part of her FLSA Collective and IMWL Class claims, as they are known violations of those laws and all having short payment rate issues are similarly situated.

### SOME EMPLOYEES PAID NO OVERTIME

52.    Upon information and belief, Plaintiff Day alleges that some Defendant employees are paid no overtime, despite working overtime hours.

53.    Defendant rationalizes the failure to pay based on Defendants offer of a healthcare benefits allegedly in place of overtime wages.

54.    However, legally an employer is not allowed to substitute any benefits for overtime wages.

55.    Plaintiff names this group of employees as part of her FLSA Collective and IMWL Class claims, as they are known violations of those laws and all having short payment issues are similarly situated.

**PLAINTIFF AND CLASS NOT PAID FOR TRAINING**

56.    Defendants pay no wages for alleged "training".

57.    Defendants have a policy and procedure of not paying any wages for employees alleged "training" work hours.

58.    For training time Defendant simply lists the worked hours, and lists a rate of pay of "$0.00".

59.    An example of this failure to pay overtime wages is found in Plaintiff Day's 3/11/2024 paycheck, which lists "Training/Office" "5.00 at 0.00". In other words, Plaintiff worked for five hours, but because Defendant classified the work as "training or office", Defendant paid Plaintiff nothing.

60.    Upon information and belief the all of Defendants employees has experienced the same violation.

61.    Plaintiff names this group of employees as part of her FLSA Collective and IMWL Class claims, as they are known violations of those laws and all having short payment issues are similarly situated.

11

## DEFENDANT FAILS TO PAY OVERTIME
## BASED ON PUTTING HOURS
## IN DIFFERENT CATEGORIES OR "BASKETS"

62.    Defendant also fails to pay earned and owed overtime wages based on Defendants putting the work time in different categories or putting work time in different "baskets".

63.    As an example of this wage violation, for the named Plaintiff, during the week of 12/25/23 to 1/10/24, Plaintiff worked a total of 89.19 hours.

64.    Yet when Plaintiff was paid for this week zero hours of overtime, despite working 9.19 hours of overtime hours.

65.    Plaintiff was paid no overtime because Defendants grouped the work into three "baskets" and failed to pay any of the hours at an overtime rate of pay.

66.    On information and belief Defendants avoid paying overtime to many employees by using the same attempted dodge of overtime payments, by classifying the wages and hours in different "baskets" and not paying overtime on overtime hours.

67.    Plaintiff names this group of employees as part of her FLSA Collective and IMWL Class claims, as they are known violations of those laws and all having short payment issues are similarly situated.

### PLAINTIFF PAID ZERO DOLLARS DUE TO ILLEGAL DEDUCTIONS

68.    Plaintiff also alleges several FLSA, IMWL and IWPCA violations based on Plaintiff's final paycheck and Defendants' unconsented deductions from Plaintiff's wages.

69.    Plaintiff's employment ended in June of 2024 when Plaintiff was fired for testifying truthfully to the DCFS agency.

70.    When Plaintiff received her final paycheck papers she found that she was paid zero dollars because Defendants took deductions of $412.89 without her agreement and/or consent to these deductions.

71.    Defendants' proffered reason for the deductions was alleged payment of childcare for the Plaintiff's child. However, as an IWPCA agreement with Defendants Plaintiff was to receive child daycare for $1.00 co-pay while Plaintiff worked for Defendants, thus the retroactive charges for daycare is a violation of the parties IWPCA agreement to provide $1.00 daycare while Plaintiff worked for Defendants.

72.    Upon hire Defendants' stated to Plaintiff Day that as a benefit the employer offered $1.00 daycare to its employees. Plaintiff accepted the offer for $1.00 daycare, and thereby created an IWPCA Agreement to receive $1.00 daycare.

73.    After illegally terminating Plaintiff for testifying to DCFS, Defendants violated the parties IWPCA agreement to provide $1.00 daycare, by charging Plaintiff $412.28 for daycare, and for deducting that amount from Plaintiff's final paycheck.

74.    By deducting $412.28 from Plaintiff's wages, without a written consent at the time of the deduction, Defendants violated the IWPCA requirement for such consent of the employee for deductions.

75.     The deduction and payment of no wages was also a violation of the IWPCA's requirement that final paychecks are to be paid within 13 days of the end of employment.

76.    The deduction and payment of no wages was also a violation of the FLSA as Plaintiff worked 22.69 hours, but was paid $0.00, thus Defendants violated the

FLSA's minimum wage regulations/rules by not paying at least $7.25 per hour for all hours worked.

77.    The deduction and payment of no wages was also a violation of IMWL as Plaintiff worked 22.69 hours, but was paid $0.00, thus Defendants violated the IMWL's minimum wage regulations/rules by not paying at least $14.00 per hour for all hours worked.

## TERMINATION CLAIMS

78.    Plaintiff also brings claims under the Illinois Whistleblower Act (IWA) 740 ILCS 174/1 in that Plaintiff provided truthful testimony to the Illinois Department of Child and Family Services (DCFS) and for that testimony Plaintiff was retaliated against by Defendants termination of Plaintiff's employment.

79.    On June 26, 2024 beginning at 9:00 AM Plaintiff Day provided DCFS with truthful testimony about the conditions at Defendant childcare facility.

80.    Shortly after Plaintiff provided truthful testimony DCFS issued a violation to Defendants.

81.    Immediately after the violation was served, Plaintiff was told by Defendant Janene Gunn Purdon-Menki that Plaintiff had "thrown her  under the bus" and that she was terminated for that testimony.

82.    Defendant later claimed Plaintiff was fired for the events leading to the DCFS violation, but Defendant was aware of that violation, and took no action based on those known actions until after Plaintiff provided testimony and/or Defendants were cited by DCFS.

83.    The IWA prohibits employers from retaliating "against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a-b).

84.    Here clearly Plaintiff testified about an actual violation of law, as Defendant was issued a violation by DCFS based on Plaintiff's testimony.

85.    The IWA allows damages including "(1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30, here Plaintiff pleads all these remedies as part of her request to the court.

86.    Here Plaintiff provided information in an administrative hearing with the DCFS that disclosed violations of state law regarding childcare.

87.    Plaintiff also names Defendant Janene Gunn Purdon-Menki as an individual Defendant under the whistleblower claims as she caused the violations of that law.

**COMMON LAW CLAIM OF RETALIATORY DISCHARGE**

88.    Plaintiff also pleads a Common Law claim for retaliatory discharge, based on the same facts found above relating to the DCFS and IWA claims.

## DEFENDANTS VIOLATE THE ILLINOIS LEAVE ACT

89.    Plaintiff also bring claims pursuant to the Paid Leave Act based on the Defendants' policy of not allowing, properly paying or failing to payout earned vacation time, in violation of the Paid Leave Act provisions requiring payment of earned wages via vacation time.

90.    The Paid Leave Act requires Illinois employers to provide employees with a minimum of 40 hours of paid leave during each 12-month period.  The law applies to every employee working for an employer in Illinois, including domestic workers.

91.    Employees are entitled to begin using the accrued paid leave after 90 days. This means the first day employees could take off time that has accrued since January 1, 2024 would be March 31, 2024.

92.    Despite the new Illinois Law requiring employers to have a pay leave policy, Defendants simply do not follow this law either.

93.    This is shown by Plaintiff Day's pay records. Plaintiff worked from January 2024 to June of 2024, and Plaintiff's employment ended in late June of 2024, yet Defendants paid nothing to Plaintiffs for her earned vacation time in her last check.

94.    Paid leave accrues at the rate of one hour of paid leave for every 40 hours worked up to a minimum of 40 hours of paid leave or such greater amount if the employer provides more than 40 hours.

95.    Here Plaintiff Day clearly worked more than 40 hours, yet her wages and her last paycheck did not show nor pay any accumulated leave time.

96.    This is demonstrated by Plaintiff Day's checks; for example for the pay periods of 2/25/24 to 3/10/24 Plaintiff worked the following hours: 34.97 (Float) 45.03 (4's) and 5.00 (training) for a total of 85 hours, yet Plaintiff's paycheck

reflected zero leave, thus Plaintiff is owed two hours paid leave for these pay periods alone.

97.    The lack of paid leave is also shown on Plaintiff's last paycheck, where Plaintiff has a year to date (YTD) total of $22,508.72 wages, which translates to total hours YTD of approximate 1,071 hours ($22,508 divided by $21.00 per hour = 1,071).

98.    Thus per the Leave Act this 1071 hours should result in Plaintiff having earned 26.77 hours of paid leave (1071 divided by 40 hours = 26.77).

99.    Yet Plaintiff's final check has no paid leave listed, and despite having earned 26.77 hours of leave, Plaintiff was paid zero hours in her last paycheck and when her employment with Defendants ended Plaintiff received no payment of earned leave in violation of the Leave Act.

100.    Defendants also fail to post Leave Act notices at the Defendants work place.

**DEFENDANTS' FAILURE TO MAINTAIN ACTUAL TIME RECORDS**

101.    Plaintiffs also alleges that Defendants failed to maintain Plaintiffs and collective/class employee time records.

102.    Upon information and belief, Defendants destroyed the actual time records of the Plaintiff, class and collective.

103.    Defendants' failure to preserve the actual time records of Plaintiff (and likely collective) is a separate and distinct violation of the FLSA and IWML.

104.    The FLSA requires Defendant to save actual time records of Plaintiff, class and collective, not just an estimation of the hours.

**MENKE's Actions were Willful, Knowledgeable and/or Had Reckless Disregard**
**for FSLA Regulations**

105.    MENKE required and permitted Plaintiff, and the FLSA Collective, to work more than 40 hours in a week.  MENKE did not pay Plaintiff and the FLSA Collective the proper overtime rate for all of these overtime hours and/or minimum wage hours.

106.    MENKE unlawful conduct has been uniform, widespread, repeated and consistent.

107.    MENKE's willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay.

108.    All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

109.    All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

**FIRST CLAIM FOR RELIEF**
**Individual and Class Action Against Defendants**
**Under the Illinois Minimum Wage Law "IMWL"**

110.    Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

111.    Plaintiff (and class) are/were employees of the Defendant pursuant to the IMWL.

112.    Plaintiff and class are/were employed by MENKE as employees.

113.   It is and was at all relevant times, a policy of MENKE to pay its employees at an improper overtime rate of pay and/or fail to pay overtime hours at overtime rate of pay and/or to not pay for overtime hours at all, (especially training pay).

114.   The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

115.   As a result of the foregoing, Plaintiff have been damaged in an amount to be determined at trial.

116.   Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

117.   Defendant Menke employs more than four (4) employees in the Jacksonville Illinois in the relevant time periods.

## SECOND CLAIM

### On Behalf of Plaintiff and All Opt-In Employees
### Against Defendant MENKE
### As a Collective Action
### (FLSA Claims, 29 U.S.C. § 201 et seq.)

118.   Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

119.   The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

120.   The Collective claims include all employees which Defendant has paid the incorrect overtime rate and/or failed to pay all overtime hours at an overtime rate of

pay and/or shaved hours (especially training hours) from Plaintiff and members of the collective.

121.    At all relevant times, Defendant MENKE has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the FLSA Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

122.    At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs and members of the prospective FLSA Class, to work in excess of forty (40) hours per week without compensating such employees for all hours worked and/or at the proper rate of overtime pay rate.

123.    At all relevant times, the work performed by employees including the Plaintiff and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

124.    As a result of the Defendant willful failure to record or compensate its employees – including Plaintiff  and members of the prospective FLSA Class – employed by Defendant for all hours worked, Defendant has violated, and continues

to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

125.    As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Class, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

126.    The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

127.    Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

128.    Plaintiff, on behalf of herself  and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

129.    Plaintiff has consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

130.    At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendant within the meaning of the FLSA.

131.    At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant

were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

132.    Due to Defendant's FLSA violations, Plaintiff and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the IWML and the FLSA Collective, pray for the following relief:

A.    That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, to employees whom have been employed by the Defendant and as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B.    That, at the earliest possible time, the Plaintiff be allowed to give notice of this class action, or that the Court issue such notice, to all persons who are

presently, or have at any time during the three years and/or five years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, as alleged herein this complaint.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to "opt out" of this lawsuit if they believe they were paid all wages due.

B.      Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

C.      Unpaid regular wages, and overtime wages pursuant to the IMWL, including treble  damages and 5% penalties per month;

D.      Compensation originating from MENKE company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F.      Certification of this case as a Collective action and a Class Action;

G.      Designation of the Plaintiff as representative of the Collective, and counsel of record as Collective;

H.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

I.      Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

J.      Unpaid wages and liquidated damages pursuant to IWPCA and the supporting Illinois Department of Labor regulations;

K.      Consequential damages;

L.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

M.      and costs of this action; and

N.      Such other relief as this Court shall deem just and proper.

## THIRD CLAIM

## INDIVIDUAL ACTION PURSUANT TO IWPCA

133.    Plaintiff repeats and re-alleges all paragraphs of this complaint.

134.    Plaintiff brings IWPCA claims for the following

   a.    Employees not receiving payment of earned vacation time.

   b.    Employees having deductions taken from earned vacation time.

   c.    Defendant failing to maintain records of vacation time and deductions from same.

   d.    Defendant failed to pay earned vacation time and/or final paycheck in a timely manner, (within 13 days of employees last work day).

135.    The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

136.    Upon information and belief, all class employees of the Defendant had the same policies imposed upon its employees.

137.   Plaintiffs are or were under the control and direction of the owner of the Defendant and/or his agents during the period of the Plaintiff employment under their contracts of service and in fact.

138.   Plaintiff was not an independent contractor, rather was an employee of the Defendant by oral agreement and/or written contract.

139.   Plaintiff' employment were in the usual course of business for which such service is performed.

140.   Plaintiff does not possess a proprietary interest in the Defendant.

141.   The Defendant is an "employer" under the terms of the IWPCA section

142.   In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

143.   Individual Defendant is named as an employer as she knowingly permitted violations of the IWPCA.

### PRAYER FOR RELIEF

WHEREFORE,  premises  considered,  Plaintiffs respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

(A)   For an order of this Honorable Court entering judgment in Plaintiff' favor against Defendant;

(B)   That the Court award Plaintiff's her actual economic damages in an amount to be determined at trial,

(C)   A declaratory judgment that Defendant's practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. §201, et sea., and attendant regulations at 29 C.F.R. §516 et sea..;

(E)    A declaratory judgment that Defendant's
       practices alleged herein violate the Illinois Minimum Act,

(F)    Judgment for damages for all unpaid regular
       wages and overtime compensation under the
       Fair Labor Standards Act, 29 U.S.C. §201, *et
       seq.,* and attendant regulations at 29 C.F.R.
       §516 et sea.:

(G)    Judgment for damages for all unpaid regular
       wages and overtime compensation under the
       Illinois Minimum Wage Law, and attendant regulations;

(H) Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. §201,
       *et seq* in an amount equal to all unpaid regular wages and overtime compensation owed to
       Plaintiffs during the applicable statutory period;

(I) Judgment for liquidated damages pursuant to the Illinois Minimum Wage Law,. and attendant
       regulations;

(J) Judgment for any and all civil penalties to which Plaintiff  may be entitled;

(K) An order directing Defendant to pay prejudgment interest, reasonable attorney's fees and all
       costs connected with this action; and

(L) pay Plaintiff for her distress, embarrassment and suffering

(M) Order payment of punitive damages sufficient to deter Defendant's future retaliations.

(N) Such other and further relief as this Court may deem necessary, just and proper.


## FOURTH CLAIM

### Pursuant to

### Illinois Whistleblower Act (IWA) 740 ILCS 174/1

144.    Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if

       fully set forth herein.

145.    Plaintiff also brings claims under the Illinois Whistleblower Act (IWA) 740 ILCS

       174/1 in that Plaintiff provided truthful testimony to the Illinois Department of

Child and Family Services (DCFS) and for that testimony Plaintiff was retaliated against by Defendants termination of Plaintiff's employment.

146.   On June 26, 2024 beginning at 9:00 AM Plaintiff Day provided DCFS with truthful testimony about the conditions at Defendant childcare facility.

147.   Defendants were so concerned to influence and effect the testimony of Plaintiff that Defendants ordered Plaintiff to testify in Defendants office, Plaintiff to avoid the undue influence hide in a closet to avoid that undue influence on her truthful testimony.

148.   Shortly after Plaintiff provided truthful testimony DCFS issued a violation to Defendants.

149.   Immediately after the violation was served, Plaintiff was told by Defendant Janene Gunn Purdon-Menki that Plaintiff had "thrown her  under the bus" and that she was terminated for that testimony.

150.   Defendant later claimed Plaintiff was fired for the events leading to the DCFS violation, but Defendant was aware of that violation, and took no action based on those known actions until after Plaintiff provided testimony and/or Defendants were cited by DCFS.

151.   The IWA prohibits employers from retaliating "against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the

information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a-b).

152.     Here clearly Plaintiff testified about an actual violation of law, as Defendant was issued a violation by DCFS based on Plaintiff's testimony.

153.     The IWA allows damages including "(1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30, here Plaintiff pleads all these remedies as part of her request to the court.

154.     Here Plaintiff provided information in an administrative hearing with the DCFS that disclosed violations of state law regarding childcare.

155.     Plaintiff also names Defendant Janene Gunn Purdon-Menki as an individual Defendant under the whistleblower claims as she caused the violations of that law.

## PRAYER FOR RELIEF

WHEREFORE,     premises     considered,     Plaintiffs respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

a)   Reinstatement as per the statute

b)   Back pay with interest

c)   compensation for any damages sustained as result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees,

d)  Costs of the litigation

e)  Other relief that is just and right.

## FIFTH CLAIM

### COMMON LAW CLAIM OF RETALIATORY DISCHARGE

156.    Plaintiff also pleads a Common Law claim for retaliatory discharge, based on the

same facts found above relating to the DCFS and IWA claims.

## PRAYER FOR RELIEF

WHEREFORE,    premises    considered,    Plaintiffs respectfully prays that each Defendant

be summoned to appear and answer herein; for orders as follows:

a)  Lost wages

b)  Punitive Damages

c)  Costs of the litigation

d)  Other relief that is just and right.

Pursuant to Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: August 16, 2024

Respectfully submitted,

By:    _____-S-John C. Ireland_____
       John C. Ireland

**Lead counsel for purposes of  RULE 11.2 DESIGNATION OF LEAD COUNSEL ON INITIAL PLEADING**

Attorney for the Plaintiff, Class and FLSA Collective

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL
60177
 630-464-9675
Facsimile 630-206-0889          attorneyireland@gmail.com