E-FILED
Wednesday, 27 May, 2026  03:09:32 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TAYLOR B. DAY, Individually, and on behalf of all persons similarly situated as members of the Collective as permitted under the Fair Labor Standards Act and as a Class Representative for the IWML Class,<br>　　　Plaintiffs,<br><br>v.<br><br>MENKE INCORPORATED d/b/a LITTLE RED WAGON and/or MENKE INCORPORATED d/b/a LITTLE RED WAGON DAY CARE CENTER and JANENE GUNN PURDON-MENKE, as an Individual under FLSA and Illinois Wage Laws as well as under the Illinois Whistleblower Act,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 24-cv-3222 |

### OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Plaintiff's Re-Filed Motion for FLSA Collective Notice to Employees of Defendant. (Doc. 20). For the reasons that follow, Plaintiff's motion is granted in part.

## I.　INTRODUCTION

On August 16, 2024, Plaintiff Taylor Day ("Plaintiff" or "Day") filed this action asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105. (Doc. 1). Plaintiff labels her Complaint as an "Individual, Collective, and Class Complaint." (*Id.*)

On January 7, 2025, Plaintiff filed a Motion for FLSA Collective Notice to Employees of Defendant. (Doc. 11). While that motion was pending, the Seventh Circuit decided *Richards v. Eli Lilly & Co.*, 149 F.4th 901 (7th Cir. 2025), which addressed the issue of notice to potential plaintiffs — "clarify[ing] this area of the law and provid[ing] district courts in our circuit with a uniform, workable frame-work for assessing the propriety of notice to a proposed collective." *Id.* at 905. On September 26, 2025, the Court denied Plaintiff's initial motion for collective notice with leave to refile upon addressing what effect, if any, the Seventh Circuit's decision in *Richards* has on Plaintiff's request for collective notice. (Text Order of Sept. 26, 2025). While Plaintiff addresses *Richards*, Defendants do not discuss *Richards* in their response to the supplemental motion.

## II.    FACTUAL ALLEGATIONS[1]

Plaintiff Tayler Day is a former hourly employee of Defendant Menke Incorporated d/b/a Little Red Wagon and/or Menke Incorporated d/b/a Little Red Wagon Day Care Center ("Defendant" or "Menke"). Menke employs a staff of between 30 and 40 full and part-time employees at any particular time. (Doc. 1 at ¶¶ 21-23). Since 2021, Menke has been at its current Jacksonville, Illinois location and Plaintiff estimates that more than 50 to 100 employees have worked for Menke during the relevant three-year period. (*Id.* at ¶¶ 24-26).

Day alleges her regular rate of pay in March and April of 2024 was $21.00 per hour but was only paid overtime at the hourly rate of $30.00 instead of $31.50. (*Id.* at ¶¶ 47-49).

---

[1] These allegations are taken from Plaintiff's Complaint.

Day named a group of employees who were not paid overtime despite working overtime hours and employees who were paid less than the proper time-and-a-half rate as part of her FLSA Collective and Illinois Minimum Wage Law Class claims. (*Id.* at ¶¶ 50-55). Menke rationalizes the failure to pay based on its offer of healthcare benefits alleged in place of overtime wages. (*Id.* at ¶ 53).

Day further alleges Menke has a policy and procedure of not paying any wages to employees for alleged "training." (*Id.* at ¶¶ 56-57). For training time, Menke simply lists the worked hours and lists a rate of pay "$0.00" as evidence by Day's March 11, 2024 paycheck listing "Training/Office" as "5.00 at 0.00." (*Id.* at ¶ 59). Day named this group of employees as part of her FLSA Collective and Illinois Minimum Wage Law Class claims. (*Id.* at ¶ 61).

Day alleges Menke failed to pay earned and owed overtime wages to her and other employees by classifying work time in different categories or "baskets." (*Id.* at ¶ 62). For example, during the pay period of December 25, 2023, to January 10, 2024, Day worked a total of 89.19 hours but was paid zero hours of overtime because Menke grouped the work into three different "baskets". (*Id.* at ¶¶ 63-65). Day names this group of employees as part of her FLSA Collective and Illinois Minimum Wage Law Class claims. (*Id.* at ¶ 67).

Plaintiff also alleges several FLSA, Illinois Minimum Wage Law, and Illinois Wage Payment and Collection Act ("IWPCA") violations based on Day's final paycheck and Defendants' unconsented deductions from Day's wages. (*Id.* at ¶ 68). Day's employment ended in June 2024 when she was allegedly fired for testifying truthfully to the DCFS agency. (*Id.* at ¶ 69). Upon receiving her final paycheck documentation, Day discovered

she was paid zero dollars because Menke deducted $412.89 without her agreement and/or consent. (*Id.* at ¶ 70). Menke claims the deduction was based on the parties' agreement for Day to receive childcare for a $1.00 co-pay while working for the Defendants. (*Id.* at ¶ 71). Additionally, Day argues Defendants violated the IWPCA by deducting the alleged childcare amount without her written consent and for failing to provide her final paycheck within 13 days of the end of her employment. (*Id.* at ¶ 74, 75). She also claims the deduction and final paycheck violated the FLSA as Day worked 22.69 hours without receiving FLSA's minimum wage requirement of $7.25 per hour. (*Id.* at ¶ 76). Finally, Day alleges Defendants also violated the Illinois Minimum Wage law when she was not paid at least $14.00 per hour for each hour worked. (*Id.* at ¶ 77).

Plaintiff seeks to bring claims for violation of the FLSA as a collective action under 29 U.S.C. § 216(b), on behalf of all employees of Menke who were, are, or will be employed by Menke who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per week (including unpaid training work hours) and/or who were not compensated at the federal minimum wage of $7.25 per hour and/or were paid at an improper rate of pay for overtime hours and/or shaved work hours. (*Id.* at ¶ 27). Plaintiff requests the FLSA violation claims are maintained as an "opt-in" collective action under § 216(b), given Plaintiff's FLSA claims are similar to those of all Menke employees. (*Id.* at ¶ 28). Plaintiff alleges Defendants are liable for improperly compensating Plaintiff and the FLSA Collective and notice should thus be sent to the FLSA Collective. (*Id.* at ¶ 29). Day argues there are numerous similarly situated current and former employees of Menke who have been denied proper overtime

compensation. (*Id.*) Such employees are known to Menke and are readily identifiable through Menke's records. (*Id.*) Plaintiff has also filed Consents to Become FLSA Party by Lindsey Brown (Doc. 17) and Murry Brown (Doc. 24).

## III.  DISCUSSION

In seeking FLSA collective notice, Day asks the Court to certify the requested collective and allow an opt-in period of 60 days, beginning from the date of mailing/posting and other means of communication. Day requests Defendant be ordered to produce the full names, aliases, addresses, phone numbers, email addresses, and last date(s) of all potential collective members; and the last known work, home, and email addresses and phone numbers of employees who worked for Defendant from August 16, 2024, to the present. Defendants request the Court deny Plaintiff's request because she has failed to submit sufficient admissible evidence in support of her request for collective notice and has failed to show how the other employees are similarly situated.

### A. Legal Standard

In authorizing employees to bring collective actions to sue employers for violations on behalf of themselves and other employees, Section 216(b) of the FLSA provides in pertinent part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

District courts take an active and early role in managing collective actions including by issuing notice to potential plaintiffs so that they may decide to join the collective. *See Richards*, 149 F.4th at 905. The Seventh Circuit in *Richards* recently addressed what a plaintiff must demonstrate to procure the court-issued notice to other potential plaintiffs. *Id.*

In determining the proper notice standard, the Seventh Circuit drew from three core principles of *Hoffman-LaRoche*. *Id.* at 910. "The first is the importance of ensuring that notice is timely and accurate — otherwise, the Court cautioned, the benefits of collective actions cannot be effectively realized." *Id.* The next consideration is judicial neutrality — "a district court's involvement in the notice process must remain distinguishable in form and function from the solicitation of claims, and courts must facilitate notice in such a way as to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* (internal quotation marks and citation omitted). The third principle involves the district court's use of discretion "to govern the conduct of counsel and the parties to prevent abuses and ensure that the joinder of additional parties is accomplished in an efficient and proper way." *Id.*

The Seventh Circuit rejected the preponderance of the evidence and strong likelihood of similarity standards in securing notice that have been adopted by other circuits as impractical and inflexible. *Id.* at 911-12. The court noted the FLSA provides that plaintiffs must be similarly situated if they are to proceed collectively. *Id.* at 912. It thus makes sense once opt-in is complete "that plaintiffs bear the burden of moving to certify their collective action, at which point the court will assess whether plaintiffs are, in fact, similarly situated and may proceed collectively." *Id.* Given the absence of statutory language stating otherwise, the court presumed plaintiffs must make this showing by a preponderance of the evidence. *Id.*

The court in *Richards* then considered whether a plaintiff can reasonably be expected to make this showing before notice and observed that it "turns largely on the nature of plaintiffs' allegations." *Id.* If the common link connecting the proposed collective is an employer's informal policy of requiring work off the clock, "it may be impossible to prove which employees were subject to that policy until opt-in plaintiffs are identified." *Id.* at 912-13. If, however, the challenged policy was more limited in scope and, for example, applied only to a particular type of worker or geographic location, then it may be quite provable prior to notice. *Id.* at 913. After noting these considerations, the court explained:

> [W]e conclude that to secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated. By this, we mean that a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy. A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in

> assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence. We acknowledge that, at this stage, the relevant evidence will likely come in the form of affidavits and counter-affidavits, including those that a plaintiff may wish to submit after seeing a defendant's rebuttal evidence. That's fine; courts routinely assess whether competing affidavits create a material factual dispute.

*Id.* This constitutes "a meaningful yet appropriate evidentiary burden on the plaintiff, reflecting both the preliminary stage of the proceedings and the practical significance of notice to both parties." *Id.* It also strikes the proper balance between allowing notice "based on little more than allegations" and a substantially higher standard that a plaintiff cannot meet without access to evidence by persons who are not yet parties. *Id.*

The court emphasized that a plaintiff is not automatically entitled to notice upon showing the existence of a material fact as to similarity. *Id.* The district court must still assess any material factual dispute. *Id.* Upon finding notice is appropriate, the district court should "facilitate notice in an efficient way that strikes an appropriate balance between timely notice and judicial neutrality." *Id.*

In discussing the importance of flexibility in promoting efficient case management, the Seventh Circuit allowed the district court to "tailor its approach depending on the issues and complexities of the case before it." *Id.* at 913-14. In certain cases, it may be appropriate to issue notice to the proposed collective, while postponing the final determination as to whether plaintiffs are similarly situated until a motion for certification is filed after opt-in and discovery are complete. *Id.* at 913. In other cases, a court may determine that a similarity dispute can be resolved by a preponderance of the evidence before notice and find that only limited and expedited discovery is warranted

"to make this determination and tailor (or deny) notice accordingly." *Id.* Plaintiff may fail to produce evidence tending to show a material factual dispute, in which case the court should deny the motion for notice without prejudice, while affording the plaintiff an opportunity for reconsideration if she comes forward with additional evidence. *Id.* at 914. If a court decides that pre-notice discovery is warranted, it should "carefully supervise this process to prevent abuses and unnecessary delay." *Id.* Moreover, "district courts should decide as soon as practicable whether notice is appropriate and are empowered to use their equitable tolling authority to ensure that plaintiffs are not unfairly disadvantaged by any delays in discovery." *Id.* The Seventh Circuit noted that equitable tolling of FLSA claims is a familiar practice within the circuit, which "is a fair and appropriate measure, especially while disputes about notice are being resolved." *Id.*

The Court in *Richards* cautioned district courts against allowing pre-notice discovery to become an adjudication on the merits. *Id.* Any such discovery "should remain narrowly tailored to the similarly situated inquiry — in other words, to the question of common issues of fact or law make it more efficient to resolve plaintiffs' claims together." *Id.* The Seventh Circuit recognized that factual disputes about similarity might overlap with merits issues which district courts need not ignore. *Id* at 914-15. "[I]t is for the district court to decide whether and to what extent a particular merits question affects the similarly situated analysis." *Id.* at 915.

### B. Application of *Richards* to this Case

In requesting Day's motion for FLSA collective notice be denied, Menke contends Day's argument is based entirely on conclusory allegations contained in unnotarized

declarations and exhibits that constitute inadmissible hearsay. However, a declaration under penalty of perjury has the same effect as an affidavit. *Owens v. Hinsley*, 635 F.3d 950, 955-56 (7th Cir. 2011). Furthermore, Day's exhibits that consist of business records such as paychecks are likely admissible under Federal Rule of Evidence 803(6).

The Court has reviewed the declarations and exhibits addressing Plaintiff's specific allegations regarding Menke's policies and procedures of paying its hourly employees straight-time pay for overtime hours, failing to pay overtime hours, and failing to pay for training/office time of hourly employees. For example, Day attached multiple paychecks in support of her specific allegations regarding Menke's policies and procedures. The March 11, 2024 paycheck lists her overtime rate of pay as $30.00 per hour, instead of $31.50 and reflects her rate of pay for 5.0 hours of "Office/Training" time was 0.00, instead of the overtime rate of $31.50. Additionally, Day provided a paycheck from December 25, 2023 to January 10, 2024 demonstrating Defendants grouped 89.19 hours of work into three "baskets" and did not pay any of the hours at the overtime rate even though she had worked 9.19 hours of overtime.

Day contends she had discussions with other employees about overtime pay issues and provided the names of eight employees she believes to be similarly situated to her. Day states Menke told her its overtime policies applied to all employees and alleges Menke avoids paying overtime to many employees by using the same methods she claims were used against her.

Lindsay Brown, who was formerly employed by Defendants as a childcare teacher and assistant director, also submitted a declaration stating Defendants did not pay her

Page 10 of 13

the proper overtime rate along with her July 31, 2023 paycheck. The paycheck indicates Brown was paid her normal hourly rate of $31.00 for 80 hours of work but was paid 0.00 for 11.75 hours of overtime during the July 17-30 pay period.

Brown states that, while she had some managerial duties, her primary job duties involved classroom teaching, maintaining a safe environment, communicating with parents and other teachers, caring for and supervising activities, and ensuring proper nutrition intake for children. Brown also identifies by first and last name seven other employees with the same or similar job duties who she claims worked over 40 hours per week.

Based on the evidence presented, the Court concludes Plaintiff has established there is a material factual dispute as to whether the proposed collective is similarly situated. The declarations provided by Day and Brown along with their paychecks constitute some evidence that they and others are victims of a common unlawful employment practice or policy. At this stage, Defendants have not submitted any rebuttal evidence and rely solely on their allegations. Thus, Day has met the "threshold showing" that *Richards* requires to secure notice.

Defendants contend the requested notice is overly burdensome given the nature of the business and the number of employees who have worked at Menke. If the Court grants Plaintiff's motion, Defendant suggests that the last known mailing address of employees or former employees would be sufficient given the amount of time and expense for Menke.

Defendants contend constructive notice has already been given. Plaintiff has had more than 18 months to add opt-in Plaintiffs but has added only two. Furthermore, Plaintiff has already established constructive notice via news and radio outlets. Defendants include a copy of an August 30, 2024 Jacksonville Journal-Courier article about the filing of the Complaint[2] titled "Class-action status sought in wage violations retaliation lawsuit against daycare." Thus, Defendants argue Plaintiff has made widespread attempts to "fish" for other potential members of her class. However, neither § 216(b) nor *Richards* or any other controlling authority provide that constructive notice is sufficient. Even if constructive notice was sufficient in some cases, the Court finds a single newspaper article that is discussed on the radio would not provide constructive notice to potential plaintiffs.

In presenting evidence that she and members of the proposed collective are victims of a common unlawful employment practice or policy, Plaintiff has shown there is a material factual dispute regarding whether the proposed collective is similarly situated and is thus entitled to preliminary notice to employees of Menke. Thus, Defendants will be required to disclose to Plaintiff Day the contact information for potential opt-in Plaintiffs as follows: (1) the full names of each and every potential Plaintiff who worked for Defendant any time after August 16, 2021, including any known aliases; (2) the last known home and work addresses of the employees for the same time

---

[2] Plaintiff's Complaint was filed on August 16, 2024.

period; (3) the known phone numbers for each employee; and (4) the known email addresses of any such employee.

The Court defers making a final determination regarding whether Plaintiff and potential Plaintiffs are similarly situated until a motion for certification is filed. Defendants will be given 30 days from the date of the entry of this Order to provide the contact information above for potential Plaintiffs. The parties are then given 14 days to submit for the Court's approval a proposed notice to potential collective members. Notice will be issued via United States Mail, by posting in a conspicuous location at Defendant's work site(s), and via Email, to the extent that Defendant has email addresses for the potential collective members. Consistent with *Richards*, the Court finds that equitable tolling is a "fair and appropriate measure," and the statute of limitations will be tolled to the date of the first filing for plaintiffs who have yet to opt in.

For all of these reasons, Plaintiff's Re-Filed Motion for FLSA Collective Notice to Employees of Defendant (Doc. 20) is GRANTED in part, as provided in this Order.

ENTER: May 27, 2026

_____/s/ Colleen R. Lawless_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE